# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

MAO-MSO RECOVERY II, LLC, MSP )
RECOVERY LLC, MSPA CLAIMS 1, )
LLC, *and* MSP RECOVERY CLAIMS, )
SERIES, LLC )
                              )      Case No.   1:17-cv-01541-JBM-JEH
       Plaintiffs, )
                              )
         v. )
                              )
STATE FARM MUTUAL AUTOMOBILE )
INSURANCE COMPANY )
                              )
       Defendant.

## ORDER & OPINION

The matter is before the Court on Defendant State Farm Mutual Automobile Insurance Company's ("State Farm") Motion to Dismiss the Amended Complaint. (Doc. 67). For the reasons explained below, State Farm's Motion to Dismiss is GRANTED for lack of subject matter jurisdiction.

### BACKGROUND

This putative class action is one of several filed around the country by the Plaintiffs.[1] Plaintiffs also have a separate but related case pending before this

---

[1] *See, e.g.*, *MAO-MSO Recovery II, LLC v. Am. Family Mut. Ins. Co.*, No. 17-CV-175-JDP, 2018 WL 835160, at *1 (W.D. Wis. Feb. 12, 2018); *MAO-MSO Recovery II, LLC v. Gov't Employees Ins. Co.*, No. PWG-17-711, 2018 WL 999920, at *7 (D. Md. Feb. 21, 2018); *MAO-MSO Recovery II, LLC v. USAA Cas. Insuranc Co.*, No. 17-20946-CIV, 2018 WL 295527, at *1 (S.D. Fla. Jan. 3, 2018); *MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharm., Inc.*, 281 F. Supp. 3d 1309 (S.D. Fla. 2017); *MAO-MSO Recovery II, LLC v. Mercury Gen.*, No. CV 17-2557-AB (FFMX), 2017 WL 5086293, at *1 (C.D. Cal. Nov. 2, 2017); *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, No. 217CV02522CASPLAX, 2017 WL 5634097, at *1 (C.D. Cal. Nov. 20, 2017); *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, 212 F. Supp. 3d 1250 (S.D. Fla. 2016), *appeal dismissed*, No. 17-11273-JJ, 2017 WL 4386453 (11th Cir. Sept. 19, 2017); *MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, No. 1:16-CV-20459-KMM, 2016 WL 4157592, at *1 (S.D. Fla. Aug. 3, 2016), *reconsideration denied*, No. 1:16-CV-20459-KMM, 2017 WL 1289321 (S.D. Fla. Mar. 31, 2017), appeal dismissed (Sept. 19, 2017); *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, No. 16-

Court—another putative class action with slightly different facts, but consisting of virtually identical allegations under the law. *MAO-MSO Recovery II, LLC et al. v. State Farm Mutual Automobile Ins. Co.*, No. 17-cv-1537 (C.D. Ill. Feb. 23. 2017). This lawsuit arises under the Medicare Secondary Payer ("MSP") provisions of the Medicare Act, 42 U.S.C. § 1395y *et seq.* A more comprehensive explanation of the MSP provisions can be found in this Court's first Order & Opinion dismissing Plaintiffs' original complaint. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, No. 17-cv-1541, 2018 WL 340021, at *1 (C.D. Ill. Jan. 9, 2018).

Despite originally being filed on March 28, 2017, this case has not advanced passed preliminary stages because the parties have litigated the issue of Article-III standing for months. "Standing under Article III is a threshold question in every federal case." *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 616 (7th Cir. 2015) (internal citation omitted). As will be described in detail below, it is obvious that Plaintiffs here lack standing because they have suffered no injury in fact. Plaintiffs have only feigned legitimacy through empty documentation and the appearance of a sophisticated corporate scheme.

## DISCUSSION

"As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing." *Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015) (citing *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 559-60 (1992)). Because standing is "not [a] mere pleading requirement[ ] but rather an

---

20271-CIV, 2016 WL 3751481, at *1 (S.D. Fla. July 14, 2016); *MSP Recovery, LLC v. Progressive Select Ins. Co.,* 96 F. Supp. 3d 1356 (S.D. Fla. 2015).

indispensable part of the plaintiff's case, [it] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

In evaluating a challenge to subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court must first determine whether a factual or facial challenge has been raised. *Silha*, 807 F.3d at 173. A factual challenge contends that "there is in fact no subject matter jurisdiction," even if the pleadings are formally sufficient. *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). "In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha*, 807 F.3d at 173. In contrast, a facial challenge argues that the plaintiff has not sufficiently "alleged a basis of subject matter jurisdiction." *Apex Dig*, 572 F.3d at 443. "In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha*, 807 F.3d at 173.

State Farm alleges that Plaintiffs do not in fact have standing, regardless of the allegations in the Amended Complaint—a factual challenge. In the alternative, State Farm brings a facial challenge to the allegations in the Amended Complaint.

Article-III standing has three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v.*

*Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016) (citing *Lujan*, 504 U.S. at 560-61)). State Farm argues that Plaintiffs cannot satisfy the first element, injury-in-fact. To satisfy the first "injury" element, the plaintiff must show, *inter alia*, that the injury affects the plaintiff in a personal and individual way. *Id.* at 1548; *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) (standing requires that the plaintiff "'personally has suffered some actual or threatened injury'"). Plaintiffs here have not suffered an injury, let alone an injury that affects them in a personal and individual way. Therefore, Plaintiffs lack standing and this case must be dismissed.

## I. THE PLAINTIFFS

Some unpacking is necessary in order to demonstrate how straightforward this case actually is, despite the voluminous briefing and documentation provided to the Court by the parties. Plaintiffs in this case are four entities: (1) MSP Recovery LLC, a Florida entity; (2) MAO-MSO Recovery II, LLC, a Delaware entity; (3) MSPA Claims 1, LLC, a Florida entity; and (4) MSP Recovery Claims, Series, LLC, a Delaware entity. Only *one* Plaintiff in this case can possibly confer Article-III standing: MSP Recovery Claims, Series, LLC.

As discussed in this Court's January 9, 2018, Order and Opinion (Doc. 61), Part C of the Medicare Act allows Medicare enrollees to obtain their Medicare benefits through private insurers, called Medicare Advantage Organizations ("MAOs"), instead of receiving direct benefits from the government under Parts A and B. 42 U.S.C. § 1395w-21(a). "The MSP makes Medicare insurance secondary to any

'primary plan' obligated to pay a Medicare recipient's medical expenses, including a third-party tortfeasor's automobile insurance." *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1152 (9th Cir. 2013) (citing § 1395y(b)(2)(A)). "In other words, 'Medicare serves as a back-up insurance plan to cover that which is not paid for by a primary insurance plan.'" *Caldera v. Ins. Co. of the State of Pa.*, 716 F.3d 861, 863 (5th Cir. 2013) (quoting *Thompson v. Goetzmann*, 337 F.3d 489, 496 (5th Cir. 2003)). The Medicare Act provides that Medicare cannot pay medical expenses when "payment has been made or can reasonably be expected to be made under . . . an automobile or liability insurance policy or plan . . . or no fault insurance." § 1395y(b)(2)(A)(ii). There is only one exception to the prohibition in paragraph (2)(A): if a primary plan "has not made or cannot reasonably be expected to make payment," the Secretary can make a conditional payment; however, since Medicare remains the secondary payer, the primary plan must reimburse Medicare for the conditional payment. § 1395y(b)(2)(B)(i)-(ii).

Section 1395y(b)(3)(A) of the MSP provisions provides for a private cause of action against primary payers who do not reimburse secondary payers for conditional payments made to Medicare beneficiaries. While the Seventh Circuit has not addressed whether an MAO may avail itself of the private cause of action afforded in subsection (3)(A), the Third and Eleventh Circuits have held that subsection (3)(A) permits an MAO to sue a primary plan that fails to reimburse an MAO's secondary payment. *See Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1238 (11th Cir. 2016); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d

353, 355 (3d Cir. 2012). Since the decisions by those circuits, district courts around the country have followed suit. *See, e.g.*, *Humana Ins. Co. v. Paris Blank LLP*, 187 F.Supp. 3d 676, 681 (E.D. Va. 2016); *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 94 F.Supp.3d 1285, 1290–91 (S.D. Fla. 2015); *Cariten Health Plan, Inc. v. Mid-Century Ins. Co.*, No. 14-476, 2015 WL 5449221, *5-*6 (E.D. Tenn. Sept. 1, 2015); *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F.Supp.3d 653, 664–65 (E.D. La. 2014); *Humana Ins. Co. v. Farmers Tex. Cnty. Mut. Ins. Co.*, 95 F.Supp.3d 983, 986 (W.D. Tex. 2014).

Plaintiffs are not MAOs. Plaintiffs allege that they are entities that have obtained claims for reimbursement via assignment from an MAO. (Doc. 63 at 1). In an attempt to show a valid assignment, and therefore a valid right to pursue these claims, Plaintiffs provided the Court with two documents: a "Recovery Agreement," dated April 28, 2016, between "Health First Administrative Plans" ("HFAP") and Plaintiff MSP Recovery, LLC. (Doc. 63-4). From the beginning, Plaintiffs have led the Court to believe, and they continue to argue, that HFAP is an MAO. The Recovery Agreement purports to assign all of HFAP's rights of recovery under the MSP provisions to Plaintiff MSP Recovery, LLC. *See id.*

However, Plaintiffs also provided the Court with a document titled "Assignment," which is dated June 12, 2017, wherein Plaintiff MSP Recovery, LLC assigns all of its rights from HFAP to "Series 16-05-456 LLC, a series of MSP Recovery Claims, Series LLC." (Doc. 63-5).

As such, there is no question that Plaintiffs MAO-MSO Recovery II, LLC and MSPA Claims 1, LLC have no bearing on the issue of Article-III standing, as those entities are not even mentioned in the relevant documentation here. Furthermore, any rights that Plaintiff MSP Recovery, LLC obtained from HFAP by way of the Recovery Agreement were later assigned to a series LLC of Plaintiff MSP Recovery Claims, Series, LLC. Thus, MSP Recovery Claims, Series, LLC is the only Plaintiff that has any alleged "rights" to vindicate to support standing in this case.

## II. PLAINTIFFS' AMENDED COMPLAINT IS MISLEADING AND THEIR ATTEMPT TO "CLARIFY" NOW IS NOT WELL-TAKEN

To reiterate, Plaintiffs are not MAOs, rather they are entities that claim to have received the rights to reimbursement under the MSP provisions by way of a valid assignment from an MAO. Plaintiffs' Amended Complaint states that "[b]y agreement dated April 28, 2016, Health First, an MAO, irrevocably assigned to MSP Recovery[, LLC] any and all of its right to recover conditional payments made on behalf of its Enrollees". (Doc. 63, at 8-9). The Amended Complaint specifies that the term "Health First," as used throughout the Amended Complaint, refers to HFAP. *Id.* at 4.

Until recently, there was no reason for the Court to believe that "Health First," as Plaintiffs use it throughout their pleadings, stood for any other entity but HFAP. But on April 26, 2018, State Farm notified the Court that the Southern District of Florida in *MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, No. 17-23841, 2018 WL 1953861 (S.D. Fla. Apr. 25, 2018), held that HFAP is not in fact an MAO and therefore had no rights under the MSP provisions to assign MSP Recovery

Claims, Series, LLC (the same Plaintiff in this case). In light of the holding in *Auto-Owners Ins.*, this Court entered an order requiring Plaintiffs to file a response and show why this case should not be dismissed for lack of standing. *See* April 27, 2018 Text Order.

On May 11, 2018, Plaintiffs filed a response arguing that they have standing to sue and that *Auto-Owners Ins.* was decided incorrectly. (Doc. 83). Plaintiffs now state that the allegations in their Amended Complaint are only accurate "**in that 'Health First' stands for the corporate collective of Health First entities**." *Id.* at 10-11 (emphasis added). As Plaintiffs now concede, there are actually <u>two</u> important "Health First" entities at play here: HFAP, a Florida corporation, and "Health First Health Plans, Inc." ("HFHP"), another, separate Florida corporation. The Amended Complaint explicitly states that the representative Medicare beneficiary, R.Y.'s, medical expenses were paid <u>by HFAP</u>. (Doc. 63 at 4). Now, Plaintiffs state that a "minor clarifying amendment" to their Amended Complaint might be necessary "to distinguish HFHP from HFAP." (Doc. 83 at 10). Plaintiffs go on to say that their "clarifying" amendment "could" state that "R.Y.'s medical expenses were subsequently paid by R.Y.'s MA plan, Health First Health Plans, Inc." *Id.* at 11.

The Court does not believe Plaintiffs have been completely forthcoming about exactly who the alleged assignor is in this case. As previously stated, the Amended Complaint makes clear that any reference to "Health First" refers to HFAP. No matter how Plaintiffs twist it, their Amended Complaint is not accurate. HFAP did

not pay the representative beneficiary's medical expenses; HFHP did. Therefore, if anybody is to be reimbursed under the MSP provisions, it is HFHP, not HFAP. It is not a "minor" clarification to say that an entirely separate corporation incurred injury. The crux of this case surrounds State Farm's alleged failure to reimburse MAOs for conditional payments they made, and Plaintiffs' case rises and falls with exactly <u>what MAO</u> assigned rights to them.

In *Auto-Owners Ins.*, Plaintiffs submitted an affidavit from HFAP's and HFHP's Chief Operating Officer, Michael Keeler. (Doc. 81-2 at 4). Keeler testified that HFHP "contracts directly with the Centers for Medicare and Medicaid Services," while "HFAP performs the administrative functions on behalf of" HFHP. *Id.* Plaintiffs also provided an "Administrative and Financial Management Agreement ("A&FM Agreement") that demonstrated what Keeler already said: that HFAP merely contracted with HFHP to provide administrative services for HFHP. (Doc. 81-2 at 7). Thus, the Florida District Court rejected Plaintiffs' pseudo-agency argument that HFAP could step into the shoes of HFHP. The Court held that HFAP was "simply a contractor to provide administrative and financial management services. Nothing . . . demonstrates that HFAP is contracted to pursue claims under § 1395y(b)(3)(A)." *Id.* The Court agrees with the Florida District Court's holding in this respect and finds no error.

III. **HFAP HAD NO "RIGHTS OF RECOVERY" UNDER § 1395Y TO ASSIGN AND THEREFORE PLAINTIFFS LACK STANDING**

Plaintiffs first argue that the Southern District of Florida "fashioned an unprecedented and legally-flawed" test that "narrowly defines what constitutes an

'MAO' entitled to pursue recovery, to the exclusion of Maintenance Service Organizations (MSOs) and Independent Practice Associations (IPAs)." *Id.* at 2. Consistent with Eleventh Circuit precedent, the *Auto-Owners Ins.* court held that the MSP provisions only allow three types of Plaintiffs to sue under § 1395y(b)(3)(A): (1) an MAO that has made a conditional payment for health care services to a Medicare beneficiary; (2) a Medicare beneficiary whose healthcare services were paid by Medicare; or (3) a direct health care provider who has not been fully paid for services provided to a Medicare beneficiary. *Auto-Owners Ins.*, 2018 WL 1953861, *4. This is because all courts to address the issue agree that the private cause of action afforded in subsection (b)(3)(A) was not intended to be a *qui tam* statute. *See MAO-MSP Recovery II, LLC*, 2018 WL 340021, *3 n. 3 (collecting cases).

Interestingly, Plaintiffs fail to explain whether HFAP is an MSO or an IPA. But whether HFAP should be included in the purview of plaintiffs allowed to bring suit under (b)(3)(A) is irrelevant. Assuming HFAP is an MAO, Plaintiffs still need to satisfy Article-III standing requirements, and this they cannot do. As Plaintiffs have now "clarified," <u>HFHP is the company that paid R.Y.'s claims; HFHP is the company that was allegedly not reimbursed</u>.

Plaintiffs argue that the Florida court's holding "incorrectly and unfairly ignores the intent" of the relevant documents by which "Health First's" rights were assigned to Plaintiffs. Plaintiffs further aver that HFAP can "stand in the shoes" of HFHP by virtue of the A&FM agreement.[2] The A&FM Agreement states that "the

---

[2] The A&FM Agreement is between "Health First Government Plans, Inc." ("HFGP")—referred to in the A&FM Agreement as the "Client"—and HFAP. (Doc. 81, Exh. B at 7). HFHP merged with HFGP

parties hereto have determined it to be in their mutual best interests for HFAP to provide certain administrative, management, network access and financial services to Client." (Doc. 81-1 at 7). Article I specifies that "HFAP shall act as the general, administrative and financial manager of Client" and "provide or perform the following services or activities on behalf of Client:

A. Strategic planning, executive guidance and general services with respect to the business activities of Client;

B. Consultation and assistance with the legal affairs of Client;

C. Coordination of employee health, welfare and fringe benefit programs;

D. Financial consultation and oversight with respect to the management of the assets of Client. Such will include the development and implementation of a program of investments for the assets of Client pursuant to which program HFAP will purchase and sell securities on behalf of Client from, to or through suck brokers, dealers, investment advisors of other parties as HFAP shall deem appropriate . . . .; HFAP will provide Client's Board regular reports with respect to its investment program and such other reports as may be necessary or requested by Client's Board;

E. Accounting and bookkeeping services. . . .;

F. Information systems support and telephone service shall be provided by HFAP to Client;

G. Access to HFAP's networks; and

H. Such other services incident to the performance of the aforementioned activities and services as may be reasonably required, including . . . risk management and compliance.

*Id.* at 7-8. Article II of the A&FM Agreement describes the "Relationship of Parties":

---

on January 1, 2016, with HFGP as the "surviving party." *Id.* at 11-12. However, it appears that on January 7, 2016, HFGP amended its Articles of Incorporation and changed the name of the surviving corporation to Health First Health Plans, Inc. (HFHP). *Id.* at 20.

"Nothing contained herein shall be construed . . . to provide HFAP with the exclusive right to manage or control Client. In performing its obligations under this Agreement, HFAP may exercise its own judgment subject to the parameters set forth herein . . . ." *Id.* at 8.

The A&FM Agreement is silent as to what law applies to its interpretation, but Florida and Illinois law dictate the same result.[3] Plaintiffs ask the Court not to ignore the clear intent of the "Health First" entities, but that request cuts both ways. An assignment, by definition, "is the transfer of some identifiable property, claim or right from the assignor to the assignee." *In re Hopkins*, 65 B.R. 967, 971 (Bankr. N.D. Ill. 1986); *see Dept. of Rev. v. Bank of America,* 752 So.2d 637 (Fla. 1st DCA 2000) ("An assignment is a transfer of all the interests and rights to the thing assigned."). The Court cannot turn the A&FM Agreement into something it's not. The A&FM Agreement simply does not contain *any* provision even suggesting, let alone explicitly stating, that HFHP intended to transfer claims under the MSP provisions to HFAP.

Furthermore, Plaintiffs would have the Court ignore the basic, corporate law principle that corporations are separate and distinct legal entities. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 380 (7th Cir. 2008) (In Illinois, the principle that "[a] corporation is a legal entity separate and distinct from its shareholders, directors, and officers . . . applies even where one corporation wholly owns another and the two have mutual dealings."); *Swan v. Bd. of Educ. of City of*

---

[3] The parties do not raise a conflicts of law issue, and neither party argues what law should apply to the contract's interpretation. Conflict of law issues are more clearly delineated in diversity cases; however, this is a federal question jurisdiction case. Generally, "[c]ourts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid–Valley Inc.,* 942 F.2d 425, 427 (7th Cir.1991). It is unimportant whether forum law (Illinois law) or Florida law applies because the conclusion would be the same either way.

*Chi.*, 956 F.Supp.2d 913, 921 (N.D. Ill. 2013) ("Under Illinois law, a corporation is a legal entity separate and distinct from . . . other corporations with which it may be affiliated."); *Whetstone Candy Co. v. Kraft Foods, Inc.,* 351 F.3d 1067, 1074 (11th Cir. 2003) ("[Florida c]orporations are separate legal entities and contracts made by a parent corporation do not bind a subsidiary merely because one corporation owns all of the stock of the other corporation."); *Molenda v. Hoechst Celanese Corp.*, 60 F. Supp. 2d 1294, 1300 (S.D. Fla. 1999), *aff'd*, 212 F.3d 600 (11th Cir. 2000) ("Indeed, the well-settled rule is that a corporation is a separate legal entity and, thus, that separate corporate form cannot be disregarded."). Plaintiffs provide absolutely no argument that would persuade this Court to ignore the fact that HFAP and HFHP are two separate legal entities, each with their own exclusive rights to sue and be sued.

The aforementioned analysis leads to the inevitable result that HFAP had no rights to assign to Plaintiffs in the first place. Therefore, because HFAP has not been assigned any rights from HFHP to pursue claims under § 1395y(b)(3)(A), Plaintiff MSP Recovery Claims, Series, LLC also has no rights to pursue claims under § 1395y(b)(3)(A). Plaintiffs therefore lack Article-III standing.

## IV. POSSIBLE RULE 11 SANCTIONS

The Southern District of Florida entered its order on April 24, 2018, concluding that HFAP was not in fact an MAO because (1) HFAP was not listed on the Medicare website with all the other MAOs such as HFHP; and (2) HFAP merely contracted with HFHP to provide administrative services; nothing in the agreement between the

two corporations indicated that HFAP had any rights to pursue MSP claims for HFHP. *Auto-Owners Ins.*, 2018 WL 1953861, \*5.

State Farm, not Plaintiffs, brought the Florida decision to this Court's attention. Since the Florida court's decision, this Court has reviewed the Medicare website and HFAP is still not listed as an MAO. HFHP remains listed. Furthermore, the Court does not see a single "IPA" or "MSO" listed. Every single plan on the list of MAOs is either an HMO, National PACE, Regional or Local PPO, PFFS (Private Fee-for-Service), Cost Contract Plan (1876 Cost and 1833 Cost), or Medicare Savings Account (MSA) Plan.[4] This makes sense, as MSOs and IPAs are not providers like the aforementioned plans. MSOs are management services organizations which contract with licensed health care providers to provide administrative and management services.[5] Likewise, IPAs contract with individual physicians to provide services to enrollees of managed health care plans, like PPOs and HMOs.[6]

Plaintiffs never specifically identified HFAP as an MSO or an IPA, but it appears that HFAP is undoubtedly an MSO. There is simply *no support* in case law,

---

[4] CMS.GOV, CENTERS FOR MEDICARE & MEDICAID SERVS., https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/MCRAdvPartDEnrolData/MA-Plan-Directory-Items/MA-Plan-Directory.html?DLPage=1&DLEntries=10&DLSort=1&DLSortDir=descending (last visited May 25, 2018).

[5] *MSO Washington, Inc. v. RSUI Grp., Inc.,* No. C12-6090 RJB, 2013 WL 1914482, at \*1 (W.D. Wash. May 8, 2013); *MAO-MSO Recovery II, LLC v. USAA Cas. Insuranc Co*., No. 17-20946-CIV, 2018 WL 295527, at \*1 (S.D. Fla. Jan. 3, 2018); *Preferred Care Partners Holding Corp. v. Humana, Inc.,* No. 08-20424-CIV, 2009 WL 982433, at \*7 (S.D. Fla. Apr. 9, 2009).

[6] *In re Pomona Valley Med. Grp., Inc.,* 476 F.3d 665, 668 (9th Cir. 2007); *Alexian Bros. Health Providers Ass'n v. Humana Health Plan, Inc.,* 277 F. Supp. 2d 880, 883 (N.D. Ill. 2003) (describing an agreement between Humana, a provider, and an IPA to arrange for the provision of medical and health care services for Humana's members); *see also* AAFP, INDEPENDENT PHYSICIAN ASSOCIATIONS (IPAS) DEFINITION, https://www.aafp.org/about/policies/all/independent-physicianassoc html (last visited May 25, 2018) (describing an IPA as a "business entity organized and owned by a network of physician practices for the purpose of reducing overheard or pursuing business ventures such as contracts with employers, accountable care organizations (ACO) and/or managed care organizations (MCO).").

the MSP provisions, or the Medicare website for Plaintiffs' proposition that MSOs should be treated as MAOs.

Not only that, Plaintiffs tacitly admit that their Amended Complaint is not accurate. Plaintiffs explicitly identified HFAP as the MAO in their Amended Complaint that paid for R.Y.'s medical expenses. Now, after being outed by the Florida court and State Farm, Plaintiffs seek to "clarify" that HFHP is actually the MAO that paid for R.Y.'s medical expenses, and did not receive reimbursement. In an apparent effort to save face and to stave off dismissal, Plaintiffs attempt to argue that HFAP is nonetheless an MAO—an argument that lacks any credible support.

Federal Rule of Civil Procedure 11(b)(3) and (4) state that, "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: ... (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery, [and] (4) the denials of factual contentions are warranted on the evidence . . . ." It goes without saying that a lawyer's duty of candor to the court must always prevail in any conflict with the duty of zealous advocacy. *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1067 (7th Cir. 2000), *decision supplemented* (Feb. 4, 2000) (citing *United States Dep't of Hous. and Urban Dev. v. Cost Control Mktg. & Sales Management of Va., Inc.*, 64 F.3d 920, 925 (4th Cir.1994)).

Rule 11 sanctions may be imposed on an attorney, a litigant, or both, FED. R. CIV. P. 11(c)(1), and the Court is vested with inherent authority to sanction counsel for bad faith conduct. *Schmude v. Sheahan*, 420 F.3d 645, 650 (7th Cir. 2005). Before imposing sanctions, the Court must "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. v. Office & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006). It is up to the discretion of the trial court to impose sanctions, in light of the available evidence. *In re Dairy Farmers of America, Inc.*, 80 F.Supp.3d 838, 860 (N.D. Ill. 2015), *citing Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir. 1999).

Because Plaintiffs' Amended Complaint was knowingly inaccurate, *see* (Doc. 83 at 11) (admitting that Plaintiffs knew there were multiple "Health First" entities and that HFAP did not actually pay R.Y's medical expenses, but that they "could not have anticipated that the distinction made any difference"); there is absolutely no basis in law to support the argument that HFAP is an MAO; and Plaintiffs only attempted to "clarify" their allegations after being outed by Defendant that the Amended Complaint was inaccurate, the Court hereby ORDERS Plaintiffs to show cause within fourteen (14) days of this Order why they should not be sanctioned under Rule 11.

## CONCLUSION

State Farm's Motion to Dismiss (Doc. 67) is GRANTED for lack of subject matter jurisdiction. This case is DISMISSED WITH PREJUDICE.[7] Defendant's

---

[7] The Court recognizes that typically, when cases are dismissed for lack of subject matter jurisdiction, dismissal is without prejudice. *See Murray v. Conseco, Inc.*, 467 F.3d 602, 605 (7th Cir. 2006). However, in this particular case,

remaining Motion to Strike or Deny Class Allegations (Doc. 77) and Motion for Leave to File (Doc. 84) are DENIED as MOOT. Plaintiffs are ORDERED to show cause within seven (7) days of this Order why they should not be sanctioned under Rule 11.[8] Defendant is also allowed seven (7) days to file a memorandum concerning whether it believes sanctions are appropriate in this case.

Entered this 25th day of May, 2018.

s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge

---

the Court cannot perceive how Plaintiffs could amend their allegations in good faith to overcome the lack of subject matter jurisdiction. *See Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) (district courts "have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile."). In fact, Plaintiffs' proposed "clarifying" amendment that HFHP paid R.Y.'s medical expenses only bolsters the Court's ultimate conclusion in this Order. Because any amendment to the Amended Complaint would be futile, and because Plaintiffs have been given a few chances to demonstrate this Court has jurisdiction, dismissal with prejudice is appropriate. *See Leavell v. Ill. Dep't of Nat. Res.,* 600 F.3d 798, 808 (7th Cir.2010) (holding that the plaintiff's complaint should be dismissed with prejudice because she "ha[d] not suggested any way that she might amend her pleading to cure the deficiency"); *James Cape & Sons Co. v. PCC Constr. Co.,* 453 F.3d 396, 401 (7th Cir.2006) (rejecting the argument that "the district court was required by Rule 15 to dismiss without prejudice and/or *sua sponte* grant leave to amend the complaint" in part because "[t]he district court could have quite reasonably believed that an amended complaint would suffer the same fatal flaws as the one before it").

[8] "Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990); *see Wojan v. Gen. Motors Corp.,* 851 F.2d 969, 971 (7th Cir. 1988) (district court possessed inherent power to impose Rule 11 sanctions against defendant, even after court had dismissed suit for lack of subject matter jurisdiction).