# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| MAO-MSO RECOVERY II, LLC, MSP RECOVERY LLC, MSPA CLAIMS 1, LLC, *and* MSP RECOVERY CLAIMS, SERIES, LLC | ) ) ) ) | |
| | ) | Case No.   1:17-cv-01541-JBM-JEH |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | ) ) ) | |
| Defendant. | ) | |

# <u>ORDER & OPINION</u>

The matter is before the Court on Plaintiffs' Response to the Court's Order to Show Cause Why They Should Not be Sanctioned under Federal Rule of Civil Procedure Rule 11. (Doc. 88).

## BACKGROUND

A more comprehensive explanation of the factual background and the governing law of the underlying merits in this case can be found in this Court's first Order & Opinion dismissing Plaintiffs' amended complaint. (Doc. 61). Plaintiffs have filed several putative class actions around the country, two of which are pending before this Court.[1]

---

[1] *See, e.g.*, *MAO-MSO Recovery II, LLC et al. v. State Farm Mutual Automobile Ins. Co.*, No. 17-cv-1537 (C.D. Ill. Feb. 23. 2017); *MAO-MSO Recovery II, LLC v. Am. Family Mut. Ins. Co.*, No. 17-CV-175-JDP, 2018 WL 835160, at *1 (W.D. Wis. Feb. 12, 2018); *MAO-MSO Recovery II, LLC v. Gov't Employees Ins. Co.*, No. PWG-17-711, 2018 WL 999920, at *7 (D. Md. Feb. 21, 2018); *MAO-MSO Recovery II, LLC v. USAA Cas. Insuranc Co*., No. 17-20946-CIV, 2018 WL 295527, at *1 (S.D. Fla. Jan. 3, 2018); *MAO-MSO Recovery II, LLC v. Boehringer Ingelheim Pharm., Inc.*, 281 F. Supp. 3d 1309 (S.D. Fla. 2017); *MAO-MSO Recovery II, LLC v. Mercury Gen*., No. CV 17-2557-AB

These putative class actions arise under the Medicare Secondary Payer ("MSP") provisions of the Medicare Act, 42 U.S.C. § 1395y *et seq.* "The MSP makes Medicare insurance secondary to any 'primary plan' obligated to pay a Medicare recipient's medical expenses, including a third-party tortfeasor's automobile insurance." *Parra v. PacifiCare of Ariz., Inc.*, 715 F.3d 1146, 1152 (9th Cir. 2013) (citing § 1395y(b)(2)(A)). Under the MSP provisions, Medicare is not supposed to pay medical expenses when payment has been made or can reasonably be expected to be made by a primary plan, such as a car insurance plan. § 1395y(b)(2)(A)(ii). However, if a primary plan "has not made or cannot reasonably be expected to make payment," the Secretary can make a conditional payment—but since Medicare remains the secondary payer, the primary plan must reimburse Medicare for the conditional payment. § 1395y(b)(2)(B)(i)-(ii).

Section 1395y(b)(3)(A) of the MSP provisions provides for a private cause of action against primary payers who do not reimburse secondary payers for conditional payments made to Medicare beneficiaries. Part C of the Medicare Act allows Medicare enrollees to obtain their Medicare benefits through private insurers, called Medicare Advantage Organizations ("MAOs"), instead of receiving direct benefits from the government. 42 U.S.C. § 1395w-21(a). An MAO may sue a primary plan under

(FFMX), 2017 WL 5086293, at *1 (C.D. Cal. Nov. 2, 2017); *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, No. 217CV02522CASPLAX, 2017 WL 5634097, at *1 (C.D. Cal. Nov. 20, 2017); *MSPA Claims 1, LLC v. Covington Specialty Ins. Co.*, 212 F. Supp. 3d 1250 (S.D. Fla. 2016), *appeal dismissed*, No. 17-11273-JJ, 2017 WL 4386453 (11th Cir. Sept. 19, 2017); *MSPA Claims 1, LLC v. Tower Hill Prime Ins. Co.*, No. 1:16-CV-20459-KMM, 2016 WL 4157592, at *1 (S.D. Fla. Aug. 3, 2016), *reconsideration denied*, No. 1:16-CV-20459-KMM, 2017 WL 1289321 (S.D. Fla. Mar. 31, 2017), *appeal dismissed* (Sept. 19, 2017); *MSPA Claims 1, LLC v. Liberty Mut. Fire Ins. Co.*, No. 16-20271-CIV, 2016 WL 3751481, at *1 (S.D. Fla. July 14, 2016); *MSP Recovery, LLC v. Progressive Select Ins. Co.*, 96 F. Supp. 3d 1356 (S.D. Fla. 2015).

subsection (b)(3)(A) that fails to reimburse it for conditional payments made. *See Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1238 (11th Cir. 2016); *In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 355 (3d Cir. 2012).[2]

### FACTS PERTINENT TO ISSUE OF SANCTIONS

Plaintiffs are not MAOs. Plaintiffs have alleged that they are entities that have obtained claims for reimbursement via assignment from an MAO. (Doc. 63 at 1). The parties have been litigating issues of Article-III standing and subject matter jurisdiction for over a year. Plaintiffs filed their original Complaint on March 28, 2017. (Doc. 1). In that Complaint, Plaintiffs failed to identify any actual facts supporting their claims. Specifically, Plaintiffs alleged that they received assignments from MAOs to pursue rights of recovery under the MSP provisions, but they failed to identify any MAOs that allegedly paid medical expenses on behalf of Medicare beneficiaries. *See id.* As such, on May 12, 2017, State Farm filed its first motion to dismiss arguing that Plaintiffs lacked standing because they had not alleged injury-in-fact. (Doc. 27).

That Motion prompted Plaintiffs to file an Amended Complaint on June 2, 2017. (Doc. 33). This time, Plaintiffs attempted to identify a "representative MAO" and "representative Medicare Beneficiary," R.F. *Id.* at 11. On June 16, 2017, State

---

[2] Since the decisions by those circuits, district courts around the country have followed suit. *See, e.g., Humana Ins. Co. v. Paris Blank LLP*, 187 F.Supp. 3d 676, 681 (E.D. Va. 2016); *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 94 F.Supp.3d 1285, 1290–91 (S.D. Fla. 2015); *Cariten Health Plan, Inc. v. Mid-Century Ins. Co.*, No. 14-476, 2015 WL 5449221, *5-*6 (E.D. Tenn. Sept. 1, 2015); *Collins v. Wellcare Healthcare Plans, Inc.*, 73 F.Supp.3d 653, 664–65 (E.D. La. 2014); *Humana Ins. Co. v. Farmers Tex. Cnty. Mut. Ins. Co.*, 95 F.Supp.3d 983, 986 (W.D. Tex. 2014).

Farm again moved for dismissal for lack of standing because the Amended Complaint was devoid of any facts actually showing injury-in-fact. (Doc. 35). This case was transferred from the Southern District of Illinois to this district on November 28, 2017, causing some delay in ruling on State Farm's motion. *See* Doc. 59. On January 9, 2018, this Court granted State Farm's motion to dismiss for lack of standing. The Court held that "Plaintiffs . . . failed to sufficiently allege injury in fact because [they did][] . . . not allege particular and concrete injuries on behalf of R.F. or the representative MAO." (Doc. 61 at 8). The Amended Complaint only mentioned the representative beneficiary and MAO in passing (and the representative MAO was redacted), without attributing any actual facts to those representatives to support standing. *See id.* Plaintiffs were granted leave to amend. *Id.*

On January 30, 2018, Plaintiffs filed their Second Amended Complaint. (Doc. 63). Noticeably, Plaintiffs abandoned R.F. as the representative beneficiary. The Second Amended Complaint alleged that State Farm "settled a dispute to pay for personal injuries with R.Y., and yet Defendant failed to provide for appropriate reimbursement to Plaintiffs' Assignors for the amounts they paid for the related items and services." *Id.* at 3. Plaintiffs' Second Amended Complaint stated as follows:

> 15. As a direct and proximate result of this accident, R.Y. required medical items and/or services. R.Y. was enrolled in a MA plan, managed by Health First Administrative Plans, Inc., ("Health First"). R.Y.'s medical expenses were subsequently paid by Health First for dates of service of January 21, 2011 through April 15, 2011.
>
> 16. Following R.Y.'s claim against Defendant's insured, Defendant indemnified its insured Tortfeasor and made payments pursuant to a settlement of R.Y.'s claims. However, Defendant did not reimburse Plaintiff MSPRC[S] or Health First for R.Y.'s medical items and services

within the requisite time frame, as required by a primary payer. Defendant's failure to pay and reimburse gives rise to statutory and common-law rights to recover these conditional payments from Defendant.

17. Health First's right to recover its payments for these medical services was assigned to Plaintiff, MSPRC[S].

*Id.* at 4. The Second Amended Complaint attached two relevant documents: a "Recovery Agreement," dated April 28, 2016, between "Health First Administrative Plans" ("HFAP") and Plaintiff MSP Recovery, LLC, (Doc. 63-4), and a document titled "Assignment," which is dated June 12, 2017, wherein Plaintiff MSP Recovery, LLC assigns all of its rights from HFAP to a series LLC of Plaintiff MSP Recovery Claims, Series, LLC, (Doc. 63-5).

On March 6, 2018, State Farm filed another Motion to Dismiss the Second Amended Complaint for lack of standing. (Doc. 67). State Farm brought a factual challenge to standing—as in, State Farm contended that "there is in fact no subject matter jurisdiction," even if the pleadings are formally sufficient. *See Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009). As a result, the Court was permitted to look "beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha v. ACT, Inc.,* 807 F.3d 169, 173 (7th Cir. 2015).

On April 26, 2018, after this Court had expended a great deal of time analyzing State Farm's motion to dismiss and Plaintiffs' documentation, State Farm notified the Court that the Southern District of Florida in *MSP Recovery Claims, Series LLC v. Auto-Owners Ins. Co.*, No. 17-23841, 2018 WL 1953861 (S.D. Fla. Apr. 25, 2018),

had just found that HFAP is not in fact an MAO and therefore had no rights under the MSP provisions to assign Plaintiff MSP Recovery Claims, Series, LLC ("MSPRCS") (the same Plaintiff in this case). In *Auto-Owners Ins.*, MSPRCS[3] submitted an affidavit from HFAP's Chief Operating Officer, Michael Keeler. (Doc. 81-2 at 4). Keeler testified that a separate Florida corporation, Health First Health Plans, Inc. ("HFHP") "contracts directly with the Centers for Medicare and Medicaid Services," while HFAP "performs the administrative functions on behalf of" HFHP. *Id.*

On April 27, 2018, this Court entered a Text Order ordering Plaintiffs to file a response showing why this case should not be dismissed for lack of standing in light of the holding in *Auto-Owners Ins.* The Court put Plaintiffs on notice that it was seriously questioning the accuracy of Plaintiffs' allegations. The Text Order stated, "In *Auto-Owners Ins.*, a Florida District Court was presented with competent evidence that Health First (the alleged MAO-assignor in this case) is not actually an MAO, despite Plaintiffs' many allegations to the contrary. Plaintiffs should address this issue in their response." This is when things got hairy.

On May 11, 2018, Plaintiffs filed a response insisting that they had standing to sue and that *Auto-Owners Ins.* was decided incorrectly. (Doc. 83). Plaintiffs continued to argue that the "Health First claims . . . are validly held by MSPRC[S]," that the Recovery Agreement "contain[ed] an irrevocable assignment of MSP Law claims," and that HFAP could step into the shoes of HFHP as HFHP's agent. *Id.* at

---

[3] MSPRCS is the only Plaintiff in the *Auto-Owners Ins.* case. Thus, MSPRCS is the only Plaintiff in this case that the Court can attribute bad faith conduct based on the proceedings in the Florida District Court.

6-8. However, in that same response, Plaintiffs admitted that their Second Amended Complaint was inaccurate in that HFAP was not the entity that paid R.Y.'s medical expenses at all—HFHP was. Plaintiffs suggested that a "minor clarifying" amendment to their Second Amended Complaint "might increase precision" concerning exactly what "Health First" means as the term is used throughout Plaintiffs' pleadings. *Id.* at 10. Specifically, Plaintiffs stated, "Plaintiffs acknowledge that identifying R.Y.'s MAO simply as 'Health First' in the Second Amended Complaint could be clarified to distinguish HFHP from HFAP." *Id.* Yet, in the very next sentence, Plaintiffs state that **such a "clarifying" amendment "would not change the substantive validity of the Health First assignments or R.Y.'s adequacy as an exemplar beneficiary."** *Id.* (emphasis added). These arguments were palpably absurd and clearly wrong under the law.

As explained in detail in the Court's May 25, 2018, Order & Opinion dismissing this case with prejudice, "[i]t is not a 'minor' clarification to say that an entirely separate corporation incurred injury." (Doc. 86 at 9). It is also well-settled under the law that corporations are separate and distinct legal entities and courts must be given good reason to ignore the corporate form. *See id.* at 12-13 (collecting cases). Furthermore, the administrative and financial services agreement between HFAP and HFHP simply did not contain any provision suggesting, let alone explicitly stating, that HFHP intended to transfer claims under the MSP provisions to HFAP. *See id.* Therefore, the Recovery Agreement and subsequent "Assignment" were

nullities, HFAP had no rights to assign in the first place, and Plaintiffs lacked standing.

It was not until Plaintiffs were threatened with possible sanctions that they acknowledged the "mistakes made by Plaintiffs, Plaintiffs' counsel and Plaintiffs' Assignor." (Doc. 88 at 2). They explain that "if Plaintiffs had . . . the awareness of the distinction between HFAP and HFHP and the foresight to have corrected the HFAP Recovery Agreement and Assignment (actions that have since been taken), they would not have to be in this uncomfortable position." *Id.*

As will be discussed below, the Court finds that monetary sanctions are warranted in this case against Plaintiff MSPRCS and Plaintiffs' counsel Christopher L. Coffin, David M. Hundley, and Courtney L. Stidham. MSPRCS mislead the Court and, in order to avoid dismissal, did not correct the assignment documentation or pleadings when it realized mid-April that same was inaccurate. Hundley, Coffin, and Stidham engaged in sanctionable conduct when they defended the misstatements in the pleadings with arguments that were groundless in law and fact. Because Plaintiffs only possess power to pursue the claims here by way of a valid assignment, it was imperative that Plaintiffs' counsel conduct a more-thorough investigation into who the assignor was in this case. MSPRCS's lack of candor and undersigned counsels' careless investigation into the facts resulted in a complete misidentification of the assigning entity and needless litigation. To compound matters, MSPRCS and Plaintiffs' counsel conceded their shortcomings only after the Court threatened sanctions and after Defendant incurred more expenses defending this lawsuit.

Federal Rule of Civil Procedure 11(b)(2), (3) and (4) state that, "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:"

> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity to further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Rule 11 sanctions may be imposed on an attorney, a litigant, or both, FED. R. CIV. P. 11(c)(1), and the Court is vested with inherent authority to issue sanctions. *Schmude v. Sheahan*, 420 F.3d 645, 650 (7th Cir. 2005). "Rule 11 does not require that the district court make a finding that the transgressor acted in bad faith"; "[r]ather, the district court need only undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Burda v. M. Ecker Co.*, 2 F.3d 769, 774 (7th Cir. 1993) (internal citation omitted). Before imposing sanctions, the Court must "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc. v. Office & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006). It is

up to the discretion of the trial court to impose sanctions, in light of the available evidence. *In re Dairy Farmers of America, Inc.*, 80 F.Supp.3d 838, 860 (N.D. Ill. 2015), *citing Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1025 (7th Cir. 1999). It goes without saying that a lawyer's duty of candor to the court must always prevail in any conflict with the duty of zealous advocacy. *Cleveland Hair Clinic, Inc. v. Puig*, 200 F.3d 1063, 1067 (7th Cir. 2000), *decision supplemented* (Feb. 4, 2000) (citing *United States Dep't of Hous. and Urban Dev. v. Cost Control Mktg. & Sales Management of Va., Inc.*, 64 F.3d 920, 925 (4th Cir.1994)).

## DISCUSSION

Based on the explicit allegations in the Second Amended Complaint and the attached documentation, the Court was led to believe that: (1) HFAP was an MAO; (2) HFAP was the MAO who assigned Plaintiffs' rights of recovery under the MSP provisions; (3) HFAP paid R.Y.'s medical expenses; and (4) "Health First" as used throughout the pleadings meant HFAP and HFAP only. In reality, none of those four things were true, and all four of those things were extremely significant to the issue of subject matter jurisdiction.[4]

Plaintiffs characterize their inaccurate allegations as "correctable flaw[s]." (Doc. 88 at 4). They argue that "it is in the nature of the course of litigation to discover

---

[4] The only point of the four that was even up for *some* debate was whether HFAP *could* be considered an MAO (even though that fact was irrelevant because HFHP was the MAO that paid R.Y.'s medical expenses). In response to the Court's April 27, 2018, Text Order to show cause why this case should not be dismissed for lack of standing, Plaintiffs fervently argued that HFAP should be considered an MAO. *See* Doc. 83 at 2 n. 1. But Plaintiffs never cited to any persuasive authority for the argument that HFAP is an MAO (especially considering Plaintiffs have since stated that they do *not* claim HFAP is an MSO or IPA). Plaintiffs now appear to concede that HFAP is not an MAO. *Id.* at 11 n. 5 ("As we now know, HFHP is the MAO, and HFAP is the entity that performs administrative functions for HFHP. HFAP does not take on financial risk for the care of HFHP's beneficiaries.").

additional facts that change the accuracy of the pleadings". *Id.* The Court would be more amenable to this argument if Plaintiffs discovered these inaccuracies early on in litigation, or at least owned up to the misstatements once the Court questioned the Second Amended Complaint's accuracy in April. The parties have been litigating the issue of standing for over a year, and this is Plaintiffs' <u>third attempt</u> at filing an adequate complaint. This is not a case where the parties are, for example, disputing two different but reasonable interpretations of the governing law. The "flaws," as Plaintiffs call them, in the Second Amended Complaint were wholesale misstatements of fact: HFAP did not pay R.Y.'s medical expenses; HFHP did. HFAP is not an MAO; HFHP is. As a result, the "Assignment" very obviously did not assign anything to MSPRCS.

Plaintiffs explain that they conceded in their supplemental response (Doc. 83) that HFHP is "the MAO, not because of the *Auto-Owners* decision or due to the filings by Defendant, but because this fact was learned from Keeler following the affidavit he provided on April 12, 2018." (Doc. 88 at 6-7). This argument does not help Plaintiffs' case. If Plaintiffs knew of the distinction between HFHP and HFAP because of the April 12th affidavit, then why was the Court unaware of the affidavit or the distinction until April 26, 2018, when State Farm brought it to this Court's attention? Once Plaintiffs learned that their pleadings were inaccurate, they had a duty to seek leave to amend with this Court.

Plaintiffs' counsel responds that they did not have appearances in the *Auto-Owners Ins.* case and were not involved in the litigation of that action. True, it would

be unfair to attribute the actions by the attorneys in Florida to undersigned counsel here. But that same sentiment does not go for Plaintiff MSPRCS. MSPRCS was aware of the distinction between HFAP and HFHP as early as April 12th, and possibly earlier considering Plaintiffs provided the Florida court with the Keeler affidavit. Furthermore, as Plaintiffs state, "[n]ot only did Plaintiffs have the resources available to contact and obtain a corrective assignment from HFHP, Plaintiffs also possess claims from multiple MAOs which could have presented a different exemplary beneficiary in this case." (Doc. 88 at 8). MSPRCS had in its possession the requisite facts necessary to take corrective action weeks ago. *See* Fed. R. Civ. P. 11(b)(3). [5]

Undersigned counsel dragged themselves through the mud when they defended the Second Amended Complaint's misstatements by contending that the inaccuracies did not alter the validity of the assignment documentation or affect the issue of Article III standing—arguments that were groundless in fact and in law. *See U.S. Bank Nat. Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d 465, 469–70 (7th Cir. 2005) (discovery of the mistaken address should have prompted the lawyer to correct the judgment; "[i]nstead, Fisher and Fisher moved to correct a scrivener's error, representing to the court, in violation of Rule 11(b)(2) and (3), that correcting the error would not "in any way, prejudice any of the parties."). Plaintiffs have since created an Addendum to the assignment documentation to cure the defects. (Doc. 88 at 8).

---

[5] Because Plaintiffs are represented by counsel, the Court is not allowed to sanction MSPRCS under Rule 11(b)(2) for groundless arguments or claims made by their attorneys. Fed. R. Civ. P. 11(c)(5)(2).

Plaintiffs' counsel further explains that the "Health First" "corporate family has a complex structure which includes numerous entities whose names contain or begin with Health First," such as Health First Health Plans, Inc., Health First Government Plans, Inc., Health First Commercial Plans, Inc., and Health First Administrative Plans, Inc. *Id.* at 10. Counsel states that "the following pieces of information were available to Plaintiffs and their counsel which caused them to believe HFAP was the "Health First" MAO: (1) HFAP did business using the name Health First Health Plans; (2) several "Health First" CMS contracts were signed by Health First Health Plans (without the corporate designation "Inc."); and (3) the CMS website lists Health First Health Plans as the legal entity name that is the MAO". *Id.*

Rule 11 "imposes an affirmative duty to investigate the facts and law that support a pleading." *Apostol v. Landau,* No. 86 C 8070, 1994 WL 110172, at *1 (N.D. Ill. Mar. 29, 1994). If the lawyer conducted a reasonable inquiry and her pleading contained factual errors, a court should be reluctant to impose sanctions on the lawyer. *Id.* To avoid sanctions, then, the attorney's conduct must have been the conduct of a hypothetical reasonable attorney. *Sullivan–Moore,* 406 F.3d at 470.

> There are various factors which the courts have looked at in order to determine whether or not an investigation is reasonable. One of the factors is the time available for investigation prior to filing. An investigation that is deemed insufficient and unreasonable when an attorney has months to prepare a complaint may nevertheless be reasonable if only a few days were available before the complaint must be filed. *S.A. Autolube Inc. v. Jiffylube International Inc.,* 824 F.2d 946, 949 (7th Cir.1988); *In Re TCI Limited,* 769 F.2d 441, 446 (7th Cir.1985). On the other hand, if it is the lawyer's own fault because of lack of due diligence or some other reason that the need to file hastily occurs, then

> this will not be sufficient cause to avoid Rule 11 sanctions if they are otherwise applicable. Ordinarily, a reasonable inquiry would require that counsel interview available witnesses, and review relevant documents—especially those in his client's possession.

*Apostol*, 1994 WL 110172, at *1.

The Court does not accept that Health First's "corporate structure" was too confusing to warrant the misstatements in the Second Amended Complaint. First, all of the Health First entities have different names, even if those names start with "Health First". Second, the Court does not credit the blanket allegation that "HFAP did business using the name Health First Health Plans," suggesting that counsel could reasonably consider the two entities as "one in the same." Again, as the Court has stated numerous times, corporations are separate and distinct legal entities. HFAP could only do business on behalf of HFHP if HFAP was allowed, either by way of written agreement or otherwise, to conduct business on behalf of HFHP. And as was readily obvious by the documentation, HFAP was not assigned any rights of recovery under the MSP provisions from HFHP. Counsel's argument is further belied by the fact that HFAP and HFHP entered into a contract for services; certainly if they were "one in the same" this would not be necessary. Fourth, the CMS website clearly lists "Health First Health Plans, **Inc**." as the MAO that contracts directly with CMS. (emphasis added). Even if several CMS contracts were signed by "Health First Health Plans" without the "Inc." designation, a reasonable attorney would assume that "Health First Health Plans" meant "Health First Health Plans, Inc." Or, at a minimum, a reasonable attorney would investigate to double check which entity signed such contracts. The Court does not believe a reasonable attorney would take

the lack of "Inc." to mean that "an assignment from HFAP was the equivalent to an assignment from" HFHP. *See* (Doc. 88 at 10). That is too large a leap.

Furthermore, Plaintiffs filed the Second Amended Complaint in January 2018, <u>ten months after litigation began</u>. The Florida Department of State lists all Florida corporations by name on its Division of Corporations website.[6] A review of that website demonstrates that Health First, Inc., Health First Administrative Plans, Inc., Health First Commercial Plans, Inc., Health First Government Plans, Inc., and Health First Health Plans, Inc. can be individually identified and differentiated from one another quite easily. Because Plaintiffs' entire case was based on rights that were allegedly assigned to them, it was counsel's duty to investigate precisely which corporate entity had the rights to assign in the first place.

State Farm has undoubtedly incurred tens of thousands of dollars defending these lawsuits all over the country. While Plaintiffs' counsel did not participate in the *Auto-Owner Ins.* litigation, Coffin and Stidham are cited as counsel for Plaintiffs in several of the other cases like this one filed around the country.[7] Plaintiffs and undersigned counsel have had plenty of time and experience to "get this right." While the Court is sympathetic that mistakes can happen, the "mistakes" here caused months of needless litigation and could have easily been rectified had counsel

---

[6] FLA. DEPT. OF STATE., DIV. OF CORPS.,
http://search.sunbiz.org/Inquiry/CorporationSearch/SearchResults?InquiryType=EntityName&inquiryDirectionType
=ForwardList&searchNameOrder=HEALTHFIRSTCOMMERCIALPLANS%20N170000061511&SearchTerm=he
alth%20first&entityId=N17000006151&listNameOrder=HEALTHFIRST%206801350 (last visited June 6, 2018).
[7] *See, e.g., MAO-MSO Recovery II, LLC v. Am. Family Mut. Ins. Co.*, No. 17-CV-175-JDP, 2018 WL 835160 (W.D. Wis. Feb. 12, 2018); *MAO-MSO Recovery II, LLC v. Gov't Employees Ins. Co.*, No. PWG-17-711, 2018 WL 999920, at *1 (D. Md. Feb. 21, 2018); *MAO-MSO Recovery II, LLC v. USAA Cas. Insuranc Co.*, No. 17-20946-CIV, 2018 WL 295527 (S.D. Fla. Jan. 3, 2018); *MAO-MSO Recovery II, LLC v. Mercury Gen.*, No. CV 17-2557-AB (FFMX), 2017 WL 5086293, at *1 (C.D. Cal. Nov. 2, 2017); *MAO-MSO Recovery II, LLC v. Farmers Ins. Exch.*, No. 217CV02522CASPLAX, 2017 WL 5634097, at *1 (C.D. Cal. Nov. 20, 2017).

undertaken a better investigation and had MSPRCS informed the Court immediately after discovering that its documentation and pleadings were inaccurate. An attorney's good faith belief that his statements were true or his omissions not misleading is insufficient to avoid sanctions. *See Senese v. Chicago Area I.B. of T. Pension Fund,* 237 F.3d 819, 824 n.2 (7th Cir.2001). "[A]n 'empty head but a pure heart is no defense.'" *Sullivan–Moore* 406 F.3d at 470 (quoting *Chambers v. American Trans Air, Inc.,* 17 F.3d 998, 1006 (7th Cir.1994)); *Thornton v. Wahl,* 787 F.2d 1151, 1154 (7th Cir.1986).

### Conclusion

For the reasons stated above, the Court *sua sponte* finds that sanctions against MSPRCS, Coffin, Stidham, and Hundley are warranted. Rule 11 requires that the sanction imposed "be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).[8] Considering (1) the level of carelessness by undersigned counsel and MSPRCS's behavior, (2) the fact that the Florida court previously reminded undersigned counsel of their duty of candor to the Court, *see Auto-Owners. Ins.*, 2018 WL 1953861, at *5 n. 9, and (3) the fact that several of these cases are pending throughout the country, increasing the likelihood that the misstatements and inaccuracies are not confined to this case, the Court finds that $5,000.00 is an appropriate sanction.

IT IS ORDERED that:

---

[8] The Court may not order the payment of attorney's fees since these sanctions were initiated by the Court, and not by motion. Fed. R. Civ. P. 11(c)(4); *Divane v. Krull Elec. Co.,* 319 F.3d 307, 314 (7th Cir. 2003).

David M. Hundley is fined $5,000.00;

Christopher L. Coffin is fined $5,000.00;

Courtney L. Stidham is fined $5,000.00;[9] and

 MSP Recovery Claims, Series, LLC, is fined $5,000.00.

Each fine is payable to the Court.


CASE TERMINATED.


Entered this 7th day of June, 2018.


s/ Joe B. McDade
_____
JOE BILLY McDADE
United States Senior District Judge

---

[9] Hundley, Coffin, and Stidham each signed Plaintiffs' Amended Complaint, (Doc. 63 at 27), Plaintiffs' response to the Court's 4/27/2018 Text Order to Show Why This Case Should not Be Dismissed For Lack of Standing, (Doc. 83 at 12), and Plaintiffs' Response to the Court's Rule 11 Show Cause Order, (Doc. 88 at 19).